WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United States of America,

          Plaintiff,

v.

Adrienne Marta Frazer,

          Defendant.

No. CR-12-01836-001-PHX-GMS

**ORDER**

Pending before the Court is Defendant Adrienne Marta Frazer's Motion for New Trial. (Doc. 106.) For the following reasons, the Motion is denied.

### BACKGROUND

On April 15, 2009 Defendant filed false amended tax returns for the 2005, 2006, and 2007 tax years. (Doc. 115 at 63.) On that same date Defendant also filed a false original tax return for the 2008 tax year. (*Id.*) In all of these returns Defendant made false claims that entitled her to large tax refund amounts. (*Id.* at 65.) On June 3, 2009, the IRS erroneously paid her a tax return of $593,651.00 for the 2008 tax return. (*Id.* at 77.) The following month, the IRS sent, and the Defendant received, frivolous filer letters for the 2005 through 2007 amended tax returns. (*Id.* at 91.) Nevertheless, the next year she again filed an additional false tax return for the 2009 tax year. (*Id.* at 109.) The United States charged the Defendant with five counts of Filing False and Fictitious Claims in violation

of 18 U.S.C. § 287—one count for each of the five tax years listed above.

At trial, Defendant admitted that the returns were false. (Doc. 115 at 65.) Her main defense was that she did not knowingly file the false tax returns because she legitimately believed the tax instruction she had received from Thomas McFadden—a charlatan who offered false tax advice in seminars that she paid to attend. She began attending these seminars in early 2009. (Doc. 112 at 63.)

The evidence at trial demonstrated that after she received the erroneous refund check for her false 2008 return, and after she had received the frivolous filing letters from the IRS, she began to recruit others to attend Mr. McFadden's seminars, showing a copy of her refund check during his instruction to demonstrate the legitimacy of his method. (Doc. 115 at 90–94.) The next year, on April 16, 2010, she again filed her tax returns for the 2009 tax year, using Mr. McFadden's fraudulent method. (*Id.* at 109.)

A month later the IRS, which had unsuccessfully been trying to obtain repayment of the erroneously-issued refund check for the 2008 tax year, levied her personal financial accounts. (Doc. 112 at 36.) The levy only recouped about $14,000 of the $593,651.00 the IRS had erroneously paid to the Defendant, and the Defendant's bank account statements showed that most of the money had been spent by the date of the levies. (*Id.* at 40.) The government also demonstrated that shortly after receiving the refund almost a year earlier the Defendant spent large sums at Saks Fifth Avenue, on home improvements, on personal care and other personal items, and that she made large gifts to family members. (Doc. 115 at 76–83.)

The IRS sent and the Defendant received several letters and forms in early June 2010, stating that she owed the government $621,062.00. (Doc. 112 at 28–29.) Defendant testified that upon the advice of Thomas McFadden, she mailed these forms back to the IRS after she signed them back over to the IRS apparently as an assertion of some form of payment. (Doc. 115 at 114–15.) On September 9, 2010 Special Agent Neri met with Defendant and informed her that she was under investigation for criminal violations of the tax code. (Doc. 95 at 8.)

After all of these events, Defendant consulted a tax attorney, Mr. Becker. (Doc. 115 at 34–35.) At trial, the Defendant testified that as a result of a conversation she had with Mr. Becker she felt no immediate need to return to the IRS her erroneous refund:

> Q: And after that conversation, did you – what did you do with regard to trying to repay this money?
>
> A: Based on his advice, I was waiting to see how this would be resolved with the IRS.

(Doc. 115 at 36.). At this point the Government objected to this testimony as hearsay, and the Court, after discussions with the Parties, sustained the objection, struck the testimony, and instructed the jury to disregard Defendant's comments.[1] (*Id.* at 37.) The Court later allowed the Defendant to testify that she was "under the impression" that she was not required to return the money until after the criminal matter had been decided. (*Id.* at 136.) After a five-day trial, a jury found Defendant guilty of all five counts on November 13, 2014. (Doc. 98.)

Defendant has since filed a motion for new trial in which she asserts four grounds supporting her request. First is the Court's erroneous exclusion of the Defendant's testimony regarding the advice she received from Mr. Becker concerning repayment of the erroneous refund to the IRS. Second is the admission into evidence of the draft tax return for the 2008 tax year that was prepared for the Defendant by her tax accountant but which was different from the return the Defendant filed with the IRS. The Defendant nevertheless subsequently claimed this draft return from her accountant and faxed it to a California corporation by the name of Taskrow (hereafter "the Taskrow fax"). (Doc. 115 at 9.) Defendant claims that admission of such evidence was error. Third, the Defendant claims the Prosecutor committed misconduct by objecting to part of her closing argument, and fourth, the prosecutor committed misconduct during its closing argument by representing that the jury as taxpayers were among the victims of the Defendant's

---

[1] The jury is presumed to have followed the Court's instructions. *United States v. Johnson*, 618 F.2d 60, 62 (9th Cir. 1980).

- 3 -

misconduct. (Doc. 106.)

**DISCUSSION**

**I.    Legal Standard**

"On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." Fed. R. Crim. P. 33. "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.*

Because the Court concludes it erred in striking the Defendant's testimony that Mr. Becker told her she need not repay the erroneous refund until after the matter with the IRS concluded, it applies the "harmless error standard for nonconstitutional error." *United States v. Moran*, 493 F.3d 1002, 1014 (9th Cir. 2007). Under this standard, a court should grant a new trial "'unless there is a "fair assurance" of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict.'" *Id.* (quoting *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997).

To determine whether a serious miscarriage of justice occurred on other grounds that Defendant has raised in this Motion—the Taskrow evidence and the Government's closing argument—the Court applies the more restrictive "plain error" review because Defendant failed to object on these grounds at trial. *See United States v. Lara-Hernandez*, 588 F.2d 272, 274 (9th Cir. 1978) ("Absent plain error, a conviction will not be reversed on evidentiary grounds not revealed to the trial court at the time of the assertedly erroneous ruling, even though the omitted argument is eventually made at some later stage of the trial."); *see also* Fed. R. Crim. P. 52 (stating any error that is harmless or

"does not affect substantial rights must be disregarded" and any "plain error that affects substantial rights may be considered even though it was not brought to the court's attention").[2]

## II.   Analysis

### A.   Mr. Becker Testimony

Defendant cites *Moran*, for the proposition that the Court committed error in striking the Defendant's testimony that, based upon the advice of her attorney, she did not repay her the amount wrongfully paid her by the United States until the termination of the criminal matter. (*See* Doc. 123, Ex. 5.)

In *Moran*, the Defendants, Mr. and Mrs. Moran were charged with various criminal counts related to their promotion of a fraudulent tax scheme about which they held classes and instructed taxpayers. 493 F.3d at 1007–08. The Moran's principal defense was that they "held a good faith belief that the programs in which [they] participated were legal . . . based, among other things, on opinions from a CPA and outside experts." *Id.* at 1001. The Ninth Circuit held that the district court erred when it refused to allow the Defendant to testify about what a CPA had told her about the legality of her tax scheme because it was not offered for the truth of the matter asserted—that the Moran's tax scheme involving off-shore investments was in fact legal—but was offered for the fact that the Morans would have believed it was legal. *Id.* The *Moran* Court then determined that the error was not harmless because it went to the very heart of the Morans' defense, "which entitled her to 'rebut the Government's proof of willfulness by establishing good faith reliance on a qualified accountant after full disclosure of tax-

---

[2] Although these standards are typically applied by appellate courts to review a district court's actions, several district courts have applied the plain error standard in considering their own exclusion of evidence on a motion for new trial under Rule 33 because the district court is performing a quasi-appellate function. *See United States v. Washington*, 263 F.Supp.2d 413, 426 n.7 (D. Conn. 2003); *United States v. Yevakpor*, 501 F. Supp. 2d 330, 334 (N.D.N.Y. 2006); *United States v. Erickson*, No. 2:12-CR-00001-LRH, 2012 WL 4194504, at *4 (D. Nev. Sept. 18, 2012). This comports with the plain language of Federal Rules of Criminal Procedure 51 and 52 and Federal Rule of Evidence 103, which apply to courts in a general sense without distinguishing between district and appellate courts. In any event, the Court does find that any error that occurred was harmless.

related information.'" *Id.* at 1013 (quoting *United States v. Bishop*, 291 F.3d 1100, 1106 (9th Cir. 2002)).

In a similar case, *United States v. Ross*, the Ninth Circuit explained the circumstances under which a district court's exclusion of testimony would constitute harmless error. 442 F. App'x 290 (9th Cir. 2011). The district court in *Ross*, similar to the district court in Moran, excluded as hearsay the defendants testimony about tax advice that he received from various tax advisors. *Id.* at 293. However, the district court allowed the defendant to state the advice that he received couched as what he "'understood' or learned from those advisors." *Id.* The district court also allowed many documents and other evidence in to allow the jury to adequately understand the defendant's good faith reliance defense. *Id.* The Ninth Circuit held that although "the district court erred as a matter of law in ruling that testimony reporting the tax advice was 'hearsay,'" the error was harmless because the jury received ample evidence on the defendant's main defense. *Id.*

After reviewing *Moran* and *Ross*, the Court concedes it was error to exclude the evidence that Defendant was under the impression that she need not return the money to the IRS because her tax attorney, Mr. Becker, advised her she need not do so. However, unlike the excluded evidence in *Moran*, and like that in *Ross*, the Becker evidence had virtually no effect on Defendant's defense, which in this case rested on her state of mind at the time she filed the false returns on April 15, 2009 and April 16, 2010. This evidence only went to the timing of her repayment of the amount she had wrongfully received. Further, the evidence established that, at the time that the Defendant received this advice from her attorney, she did not have the money with which to repay the IRS because she had already spent it.

In contrast to both *Moran* and *Ross*, the tax advice that was stricken here did not go to the Defendant's good faith belief as to the legitimacy of the tax scheme pursuant to which she filed her returns. Her alleged good faith belief in that scheme was based on the advice of Mr. McFadden and not her tax attorney. She was able to put in front of the jury

1 all of the evidence relating to the instruction of Mr. McFadden concerning the tax
2 scheme. All such events took place before, and in most instances long before, she sought
3 the advice of Mr. Becker in late 2010.[3] For example, she attended the seminars of
4 Thomas McFadden in early 2009. (Doc. 112 at 63.) She filed the false amended tax
5 returns for the years 2005, 2006, and 2007 and the false original tax return for the year
6 2008 on April 15, 2009. (Doc. 115 at 63.) She received the return check for $593,651.00
7 on June 3, 2009. (*Id.* at 77.) She received frivolous filer letters for the 2005 through 2007
8 amended tax returns on July 9, 2009. (*Id.* at 91.) She attended other seminars later in
9 2009. (Doc. 112 at 63.) She filed the last fraudulent tax return for which she was charged
10 on April 16, 2010. (Doc. 115 at 109.) Her personal bank accounts were levied in May
11 2010. (Doc. 112 at 36.) She received several letters and forms from the IRS in early June
12 2010, stating that she owed $621,062.00 at that time. (*Id.* at 28–29.) Then on September
13 9, 2010 Special Agent Neri met with Defendant and informed her that she was under
14 investigation for criminal violations of the tax code. (Doc. 95 at 8.) And it was only after
15 all of this that Defendant consulted Mr. Becker about whether she should repay money to
16 the IRS or wait until after trial. (Doc. 115 at 34–35.)

17 Further, the evidence admitted by the government establishes that in September
18 2010 the IRS had already levied the approximately fourteen thousand dollars that the
19 Defendant had in her financial accounts. (Doc. 112 at 36.) That levy also demonstrated
20 that she had spent much of the $593,651.00 that she had been erroneously paid. (*Id.*) The
21 advice of Defendant's attorney that Defendant had no immediate obligation to repay,
22 delivered more than a year after she had been paid the erroneous refund, and after she had
23 already spent that refund, and after the IRS had instituted a levy on her financial accounts
24 is not materially relevant to whether she had knowledge that her returns were false when
25 she filed them. As well, the Court allowed Defendant to testify that she was under the
26 impression that she was not required to repay the money until after the criminal matter

---

[3] Although the evidence presented at trial does not indicate the specific date when Defendant consulted with Becker, she states that she met him at some point after meeting with Special Agent Neri on September 9, 2010. (Doc. 115 at 34–35.)

- 7 -

was resolved. (Doc. 115 at 136.)

The Defendant presented all of the evidence on her "good faith" defense and because the excluded evidence was unrelated to this defense, the Court's erroneous decision to strike the Defendant's testimony concerning what her tax attorney told her was harmless error.

### B. Taskrow Fax

Defendant next objects to the admission at trial of the Government's evidence showing that Defendant requested from her accountant a draft copy of her tax return for the year 2008—instead of her completed 2008 tax return—and faxed that draft to Taskrow to receive an unspecified benefit. At trial, Defendant presented evidence suggesting that although her accountant faxed to Taskrow the draft 2008 tax return, she also sent to Taskrow the version of her 2008 return that she filed independent of her accountant. (Doc. 115 at 605.) As noted above, the Court will apply the plain error standard because Defendant did not object to the Government's admission of this evidence at trial. *Lara-Hernandez*, 588 F.2d at 274. Defendant now objects to this line of reasoning for the first time under Federal Rules of Evidence 403 and Rule 404(b).[4]

It was not plain error for the Court to admit this evidence under Rule 404(b). The Government's offered evidence showed that Defendant's accountant did send a fax to Taskrow of the draft 2008 tax return. Further, apart from Defendant's testimony, there was no evidence produced at trial showing that Taskrow received the version of the 2008 tax return that Defendant filed. Defendant concedes that the Government did not offer this evidence as proof of a crime or wrongful act under Rule 404(b): "[t]he government presented no evidence whatsoever that [Defendant] actually used the 2008 draft return that she obtained in June 2009 for any reason legal or illegal." (Doc. 106.) Rather, the Government offered this evidence to show that Defendant knew that there was something

---

[4] Defendant asks for leniency in not objecting sooner because the Government did not properly give notice of this testimony before trial. However, the Government's notice discloses this anticipated testimony, and, in any case, Defendant fails to provide an excuse for not objecting either at or prior to trial.

illegitimate about the tax return that Defendant filed at the advice of Thomas McFadden. Under Rule 404(b), such evidence of "other acts" is admissible to prove knowledge so long as the Government provides "reasonable notice of the general nature of any such evidence." The Government asserted the following in its Notice of Intent to Introduce Inextricably Intertwined Evidence and 404(b): "Frazer did, however, request that Shapiro fax the original return to a firm called TASKROW." (Doc. 39.) Because the Government provided Defendant ample notice of the general nature of the Taskrow evidence, the Court did not commit plain error by admitting it.

Further it was not plain error for the Court to admit this evidence under Rule 403 because the probative value of the evidence was higher than Defendant asserts. This evidence tended to show that the draft return prepared by Defendant's accountant for the 2008 tax year is not the return she submitted to the IRS in April 2009. It also showed that Defendant knew that the 2008 tax return was false. Defendant was able to provide rebuttal testimony that she sent to Taskrow all of her financial information, including the tax returns that she filed using the technique taught to her by Thomas McFadden. Defendant has not persuasively argued why the jury should have been precluded from drawing its own conclusion about this testimony or why it posed a danger of unfair prejudice, confusing the issues, or misleading the jury. *See United States v. Rizk*, 660 F.3d 1125, 1132 (9th Cir. 2011) ("[I]n view of the inherently fact-specific nature of the Rule 403 balancing inquiry, and the special deference to which district courts' decisions to admit evidence pursuant to that Rule are entitled, it is the rare exception when a district court's decision to admit evidence under Rule 403 constitutes plain error.") (quoting *United States v. Plunk*, 153 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds*). Admission of this evidence was not plain error.

### C.   Closing Argument

Defendant finally argues that the Government committed prosecutorial misconduct during closing argument by (1) objecting during Defendant's closing argument to the Defense's statement that the Government could have looked at Defendant's credit report

- 9 -

1   to determine if she had truly used the 2008 tax return to apply for a loan and (2) stating
2   during its own closing that the money that Defendant obtained came from them as well as
3   other tax payers. To find prosecutorial misconduct, the Court must determine not only
4   whether the prosecution committed error but also ""whether it is more probable than not
5   that the prosecutor's conduct materially affected the fairness of the trial." *United States v.*
6   *McKoy*, 771 F.2d 1207, 1212 (9th Cir. 1985).

7   Defendants' contention that the Government committed misconduct by objecting
8   during the Defense's closing fails to even demonstrate error because the Court overruled
9   the objection and allowed Defendant to present this argument. (*See* Doc. 119, Ex. 1.)

10  Defendant's second contention regarding prosecutorial misconduct, also comes
11  belatedly because the Defendant did not raise an objection to the Government's conduct
12  at trial. Thus, the plain error standard will apply. *See United States v. Sullivan*, 522 F.3d
13  967, 982 (9th Cir. 2008) ("Mousseau did not object at trial to these acts of alleged
14  misconduct. Accordingly, he must show that the district court plainly erred when it did
15  not sua sponte address the alleged misconduct.").

16  While the Defendant cites to some out-of-circuit authority that holds that it is error
17  to refer to "the individual pecuniary interests of juror as taxpayers" in argument, *see*
18  *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007); *United States v. Schimmel*,
19  943 F.2d 802, 806 (7th Cir. 1991), all courts addressing this issue to which Defendant
20  cites have held that such errors are harmless. This is especially true when the
21  Government's case is strong, the Court instructs the jury that the attorney's arguments are
22  not evidence, and the Government does not misstate evidence. *See Palma*, 473 F.3d at
23  902; *Schimmel*, 943 F.2d at 806; *United States v. Scott*, 660 F.2d 1145, 1177 (7th Cir.
24  1981) ("Although inflammatory argument may be grounds for reversal, the government
25  should not be restricted to sterile recitation of uncontroverted facts.").

26  In the present case, the Government's statement to the jury that the victim of
27  Defendant's crime was "you, and every one of the U.S. taxpayers" was error. (Doc. 123,
28  Ex. 2.) The Government, however, provided substantial evidence from which a jury could

return a guilty verdict, including, among other things, that the scheme by which Defendant was allegedly deceived was transparently fraudulent; that Defendant did not consult her accountant before filing her tax return; that Defendant's accountant drafted different tax returns for four out of the five years than the Defendant ultimately filed; that the Defendant faxed copies of her accountant's non-filed tax return for 2008 with a separate financial institution; and that Defendant had received frivolous filer letters from the IRS before submitting the most recent false return. Nothing indicates that the Government misstated the evidence, and the Court properly instructed the jury that the attorneys' statements were not to be considered evidence. The Government's remarks invoking the pecuniary interests of the jury did not constitute prosecutorial misconduct because they did not "materially affected the fairness of the trial," and it was not plain error for the Court to not address these remarks sua sponte. *See Sullivan*, 522 F.3d at 982; *Scott*, 660 F.2d at 1177.

## CONCLUSION

The Court did err when it excluded Defendant's statement regarding the advice of her tax attorney concerning the timing of her repayment of the erroneously paid return. This error was not prejudicial because a preponderance of the evidence demonstrates that the error did not materially affect the jury's verdict. Further, Defendant contends that the Government committed prosecutorial misconduct by using improper arguments during closing statements and by objecting to Defendant's arguments improperly. The only instance of error was the Government's reference to the jurors' pecuniary interests. This was not misconduct because it did not affect the fairness of the trial, and it was not plain error for the Court to not address this sua sponte. Finally, neither the Court's exclusion of the tax attorney evidence nor the Government's statement, viewed separately or together, "preponderate[] sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Alston*, 974 F.2d at 1211.

/ / /

1    **IT IS THEREFORE ORDERED** that Defendant Adrienne Marta Frazer's
2 Motion for New Trial. (Doc. 106) is **DENIED**.
3    Dated this 5th day of March, 2015.

_____
Honorable G. Murray Snow
United States District Judge